IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                  OPINION AND ORDER

         Plaintiff,

                  08-cv-744-bbc

    v.                  05-cr-42-bbc

ALLEN LADD,

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Defendant Allen Ladd has filed a timely motion under 28 U.S.C. § 2255, arguing that both his conviction and sentence are illegal in fourteen different respects. After reviewing all fourteen of his contentions, I am not persuaded that any of them provide any reason for overturning his conviction or re-sentencing him.

      In the following discussion of defendant's contentions, have kept the numbers that defendant has given to each of his contentions but grouped those that raise the same general issue.

1, 2 & 13. <u>Ineffectiveness of counsel on Fourth Amendment issues</u>

      Defendant's first, second and thirteenth claims overlap so I will consider them

1

together. Defendant contends that his trial counsel failed to advise him that he could file a motion to suppress the incriminating evidence discovered after the police detained him at gun point at a Denny's restaurant in Madison on March 12, 2005. There was a good reason for this failure. The stop was legal because the officers had reasonable suspicion to detain defendant.

In the morning of March 12, Madison police had arrested Emmit Quinn. For his own reasons, he wanted to cooperate with the police. He told them that he was supposed to meet "Pops" that evening at Denny's at 8:00 to buy drugs from him. Quinn told the police that Pops would be driving a maroon, four door Cadillac, neat and good condition. He described Pops as having short hair, a large scar on his face, about 5'6" and weighing about 130 pounds. The police took up surveillance at Denny's. As predicted by Quinn, a large maroon Cadillac drove up about 8:00 pm, pulled into the parking lot and reversed into a parking spot. None of the three black male occupants got out of the car. At that point, the officers approached the car with their guns drawn, telling the occupants to raise their hands in the air. The two passengers complied; the driver did not. (The driver was later identified as defendant.) He appeared to be manipulating something in the car, leaning to his left and using his left arm. While he did this, the car's trunk popped open.

One of the officers approached the car and observed marijuana in the ashtray. A search ensued, aided by a canine, who "hit" on the dashboard area left of the car's steering

wheel. Closer examination revealed a removable section under the dashboard that contained baggies of cocaine base, and a Jennings, .380 caliber pistol, serial number D5492, with six rounds of ammunition in the magazine.

Defendant cannot object to the stop, the subsequent search or the way in which he was approached. "When the stop is justified by suspicion (reasonably grounded, but short of probable cause) that criminal activity is afoot, . . . the police officer must be positioned to act instantly on reasonable suspicion that the persons temporarily detained are armed and dangerous." Arizona v. Johnson, 129 S. Ct. 781 (2009). In defendant's case, the police had reasonable suspicion to believe that the occupants of the maroon Cadillac were about to engage in a drug transaction. Under the circumstances, in a parking lot of a family restaurant, they could not risk approaching in a manner that would allow the occupants to draw guns and begin shooting. See also United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir. 1994) (noting "trend granting officers greater latitude in using force in order to 'neutralize' potentially dangerous suspects during an investigatory detention.") (Citation omitted). Reviewing the cases arrayed against defendant's position, counsel would have had no reason to advise defendant that he should file a motion to suppress; such a motion would have been futile, given the lack of legal support.

Defendant contends further that counsel should have used the police reports to show that Quinn was unreliable and that the police had no good faith basis to rely on his

3

information when they staked out Denny's. (Ground 13). Even if Quinn had been unreliable in the past, in this instance, he gave the police specific information about the car that defendant drove and about when it would be at Denny's. When the officers observed the car, the time it arrived and the behavior of the driver and passengers upon arriving (backing into a parking spot and not getting out of the car), they had reasonable suspicion to check out the car. It would have been a waste of time for defense counsel to pursue a suppression motion.

3. Ineffective assistance of appellate counsel

It was not ineffective for defendant's appellate counsel not to raise the court's alleged error in preventing his counsel from questioning the officer who removed defendant from the car about statements that defendant made to them. At trial, the government objected to the questions on the ground that any answers the officer gave would be hearsay as to defendant; the objection was sustained. Contrary to defendant's belief, his statements to the officer are statements that were made outside the courtroom and for that reason could not be admitted into evidence for their truth, Fed. R. Evid. 802, unless they came within some exception to the hearsay rule codified in Fed. R. Evid. 803 or 804, which these statements did not.

4

4, 9, 11 and 12.  Ineffective assistance of trial counsel relating to cocaine base

Defendant raises a number of issues relating to the nature of the controlled substance he was charged with distributing.  First (ground 4), he says it was error for the court to instruct the jury that it had to find that he distributed cocaine base, rather than crack cocaine.  Second (ground 9), he accuses his trial counsel of not examining the expert chemist on the accuracy of the tests he used to determine whether the substance found in defendant's car was cocaine base.  Third (ground 11), he challenges the court's decision to sentence him for distributing the crack form of cocaine when the jury found he had distributed cocaine base.  Fourth (ground 12), he characterizes his trial counsel as ineffective because he failed to object when the court did not require the government to carry its burden of proving that defendant had distributed crack cocaine.

All of these arguments are foreclosed to defendant because he argued on direct appeal that the government failed to prove beyond a reasonable doubt that the substance he possessed was crack cocaine.  Having raised the issue once unsuccessfully, he cannot raise it again, even in the form of an ineffective assistance of counsel argument.  The law of the case prevents reargument of matters that have been decided on direct appeal.  Section 2255 is not intended to be either a substitute for a direct appeal or an opportunity to reargue matters decided on direct appeal. Varela v. United States, 481 F.3d 932, 935 (7th Cir. 2007) (§ 2255 not substitute for belated appeal; issues raised on direct appeal may not be

5

reconsidered).

5, 6 & 7. Court's instructions and handling of note to jury

With no citation to authority and no basis for his argument, defendant says that it was error for the court to instruct the jury that it must return a unanimous verdict (ground 5), and to tell the jury that the record contained no evidence to show that the marijuana found in defendant's car was his and not his passenger's (ground 7). He also criticizes the court's refusal to answer a note from the jury asking whether there had been any testimony at trial to show that the meeting at Denny's had a specific purpose (ground 6).

Federal law requires unanimity in verdicts in criminal cases. "The origins of the unanimity rule are shrouded in obscurity, although it was only in the latter half of the 14th century that it became settled that a verdict had to be unanimous." Apodaca v. Oregon, 406 U.S. 404, 409 (1972) (citing 1 W. Holdsworth, A History of English Law 318 (1956); Thayer, The Jury and its Development, 5 Harv.L.Rev. (pts. 1 and 2) 249, 295, 296 (1892)). Nothing in the Constitution addresses the subject explicitly but the Supreme Court has held that the Sixth Amendment contains such a rule, albeit not one that is incorporated into the Fourteenth Amendment so as to apply to the states. Id. It would have been error to tell the jury in defendant's case that it did not need to reach a unanimous verdict.

As for the instruction to the jury not to consider the marijuana against defendant,

6

defendant has no ground on which to object. It would have been error for the jury to take the marijuana into consideration against defendant.

Answering the question in the jury's note would have been an improper intrusion into the jury function. It was the job of the jury to decide why defendant had gone to Denny's; not the court's.

8. Ineffective assistance of counsel in not objecting to court's denial of judgment of acquittal

Defendant objects to his trial counsel's failure to object to the court's denial of his motion for judgment of acquittal without allowing argument on the motion. A judgment of acquittal is granted only if the court can find that, resolving all disputes in the government's favor, no reasonable jury could find in the government's favor. Defendant could not make that showing, no matter how brilliantly or long his counsel argued. There was no point for her to object to the denial of her opportunity to be heard on the motion.

10. Ineffective assistance in not objecting to the government's cross examination

Defendant contends that his trial counsel was ineffective because she did not object to the government's going beyond the scope of defendant's direct examination in its cross examination of witness Robbyn Jones. Defendant argues that the evidence elicited by the government helped prove that the maroon Cadillac was his, thereby allowing the jury to find

7

that he would have known of the secret compartment under the dashboard.

It is not necessary to decide whether the government's questioning did go beyond the scope of defendant's direct examination of the witness. Any error by the government in asking the questions or by defense counsel in not objecting would not be an error of constitutional magnitude, simply a trial error.

14. Ineffectiveness of trial and appellate counsel in not arguing the discrepancies in crack and powder cocaine sentences

Defendant was sentenced approximately ten months before the Supreme Court decided in Kimbrough v. United States, 128 S. Ct. 558 (2007), that sentencing courts could consider the discrepancies between sentences for crack and powder cocaine offenses when sentencing crack offenders. Defendant's counsel cannot be criticized for failing to anticipate that the Court would give sentencing courts leeway to consider the discrepancies between the two kinds of sentences. Valenzuela v. United States, 261 F.3d 694, 700 (7th Cir. 2001) ("'[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law'") (quoting Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993)); see also United States v. Smith, 241 F.3d 546, 548 (7th Cir. 2001) (noting that ineffective assistance of counsel argument premised on counsel's failure to anticipate Apprendi v. New Jersey, 530 US. 466 (2000), would be untenable).

8

In summary, defendant has shown no ground for granting his motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

ORDER

IT IS ORDERED that defendant Allen Ladd's motion for post conviction relief under 28 U.S.C. § 2255 is DENIED.

Entered this 17th day of March, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge